UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

December 1, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:  *Catherine B. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
     Civil No. 22-3089-CDA

Dear Counsel:

On November 30, 2022, Plaintiff Catherine B. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny her claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 11, 16, 17). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REMAND the case to the Commissioner for further consideration. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on November 14, 2019, alleging a disability onset of March 13, 2017. Tr. 245–58. Plaintiff's claims were denied initially and on reconsideration. Tr. 130–37, 151–57. On May 11, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 31–57. Following the hearing, on May 24, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 9–30. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.  THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination

---

[1] 42 U.S.C. §§ 301 et seq.

*Catherine B. v. Kijakazi*
Civil No. 22-3089-CDA
December 1, 2023
Page 2

using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since March 13, 2017, the alleged onset date." Tr. 14. At step two, the ALJ found that Plaintiff suffered from severe "osteoarthritis; substance addiction (alcohol); lumbar and cervical Degenerative Disc Disease ('DDD'); lumbar radiculopathy; cervical disc disease; depression/bipolar; and Post-Traumatic Stress Disorder ('PTSD')." Tr. 14–15. The ALJ also determined that Plaintiff suffered from non-severe "hypertension, kidney stones, and migraines." Tr. 15. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: She is capable of lifting/carrying 20 pounds occasionally and 10 pounds frequently, sitting for 6 hours in an 8-hour day, and standing and/or walking for 4 hours in an 8-hour day. She can push/pull as much as she can lift/carry. The claimant can climb ramps and stairs occasionally, climb ladders, ropes, or scaffolds occasionally, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. She is able to perform simple and detailed tasks. She is unable to perform assembly line work where the coworkers work side by side, and the work of one affects the work of the others. She is unable to perform production-pace work where work must be completed within strict time constraints.

Tr. 17–18. The ALJ determined that Plaintiff was unable to perform any past relevant work but could perform other jobs that existed in significant numbers in the national economy. Tr. 23. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 24.

### III.  LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached by applying the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir.

1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

Plaintiff argues that the ALJ's decision lacks the support of substantial evidence for two reasons. ECF 11, at 7. First, she avers that the ALJ "failed to provide a proper narrative discussion" to support the conclusion that Plaintiff "is unable to perform assembly line work where the coworkers work side by side, and the work of one affects the work of the others" and the conclusion that Plaintiff "is unable to perform production-pace work where work must be completed within strict time constraints." *Id.* at 9 (quoting Tr. 18). Plaintiff argues that the ALJ failed to connect these RFC provisions to Plaintiff's moderate concentration, persistence, and pace limitations, making it "unclear how the ALJ reached those particular conclusions." *Id.* Because the ALJ did not provide a rationale for these conclusions, Plaintiff asserts that the Court cannot meaningfully review the ALJ's decision. *Id.* Plaintiff also contends that the ALJ's conclusions pertaining to Paragraph B of Listings 12.04 and 12.15 are not supported by substantial evidence and are contrary to applicable law. *Id.* at 13–21.

Defendant counters that substantial evidence supported the ALJ's evaluation of Plaintiff's mental impairments because "the ALJ's discussion of the evidence provides sufficient insight into [their] thought process and analysis sufficient for this Court to 'trace the path' to [their] overall RFC finding and perform meaningful judicial review." ECF 16, at 17. Defendant also argues that the ALJ thoroughly explained why Plaintiff's impairments did not meet or equal certain listed impairments at step three. *Id.* at 7–15.

When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation" set forth at 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3). *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas—concentration, persistence, and pace ("CPP")—concerns "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c).

"[O]nce an ALJ has made a . . . finding that a claimant suffers from moderate difficulties in [CPP], the ALJ must either include a corresponding limitation in [their] RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec. Admin*, No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015) (citing *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015)), *report and recommendation adopted*, (D. Md. June 5, 2015). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry v. Saul*, 952 F.3d 113, 121–22 (4th Cir. 2020). Nor may an ALJ accommodate a claimant's moderate CPP limitations by restricting the claimant to "work[ing] in two-hour increments with normal breaks," as such breaks are "customary

even for those without limitations." *Caitrin M. v. Kijakazi*, No. BAH-22-2785, 2023 WL 5300318, at *4 (D. Md. Aug. 17, 2023) (collecting cases). However, an ALJ may accommodate a claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017).

Here, at step three, the ALJ noted that Plaintiff's "consultative exam shows some deficits in [CPP] as she scored 25/30 with issues in delayed recall and in serial sevens." Tr. 16. The ALJ also noted that Plaintiff's "mental status examination results are normal, and her treating practitioners did not observe that [she] was overly distractible or slow. Furthermore, [she] has reported coloring, watching TV, and reading for pleasure, which requires some concentration and persistence." *Id.* The ALJ further observed that Plaintiff has "reported doing a variety of daily tasks that require some concentration, persistence, and pace, such as preparing meals, gardening, and handling her finances." Tr. 16–17. Lastly, the ALJ noted that Plaintiff is "hopeful [that] her medication will be adjusted to improve her concentration." Tr. 18. Based upon these observations, the ALJ determined that Plaintiff possessed a "moderate" CPP limitation. Tr. 16.

Subsequently, the ALJ concluded that Plaintiff "is unable to perform assembly line work where the coworkers work side by side, and the work of one affects the work of the others" and that Plaintiff "is unable to perform production-pace work where work must be completed within strict time constraints." Tr. 18. The ALJ did not specifically state that these provisions were intended to accommodate Plaintiff's CPP limitations but, assuming that they were, the ALJ did not explain how these restrictions were intended to address those limitations.

The Court agrees with Plaintiff that this lack of explanation warrants remand. A claimant's RFC represents "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Social Security Ruling[2] ("SSR") 96-8P details the steps an ALJ must take when assessing a claimant's RFC. *See generally* SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). Specifically, the ruling provides that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Here, the ALJ did not provide a narrative discussion to support the RFC's production-pace and assembly-line restrictions.

Defendant disagrees and points to, among other things, the ALJ's discussion of Plaintiff's "normal psychiatric examinations," her reports of improvement through treatment, and her activities of daily living as evidence that the ALJ sufficiently explained their decision to restrict Plaintiff from production-pace and assembly-line work. ECF 16, at 16–20. To be sure, this

---

[2] "Social Security rulings constitute the [SSA's] interpretations of the statute it administers and of [the SSA's] own regulations." *Chavez v. Dep't of Health & Hum. Servs.*, 103 F.3d 849, 851 (9th Cir. 1996) (citation omitted). While SSR 96-8P and other Social Security rulings "do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995) (citing *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989)).

evidence *may* support conclusions that Plaintiff's CPP limitations can be effectively accommodated by restrictions from production-pace and assembly-line work. But SSR 96-8P does not merely require an ALJ to provide a discussion containing evidence that supports the ALJ's conclusions. Rather, it requires the ALJ to "describ[e] *how* the evidence supports *each*" of the ALJ's conclusions. SSR 96-8P, 1996 WL 374184, at *7 (emphasis added). By failing to specifically address how the evidence supports these RFC provisions, the ALJ contravened SSR 96-8P. Defendant's argument is therefore unavailing.

Having determined that the ALJ erred in assessing the RFC, the Court must consider whether the error warrants remand. Ordinarily, remand of an SSA decision for legal error is unwarranted unless a plaintiff shows that the error was harmful. *See Josiah T. v. Comm'r, Soc. Sec. Admin.*, No. SAG-20-3572, 2022 WL 684944, at *2 (D. Md. Mar. 8, 2022) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Plaintiff does not explain how harmful error resulted from the ALJ's failure to provide a basis for the assembly-line and production-pace provisions at issue in this case. *See generally* ECF 11. Nevertheless, remand is appropriate where "inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (citation omitted). Here, given the lack of a narrative discussion and the lack of any record evidence that might shed light on the appropriateness of a production-pace or assembly-line restriction, the Court is "left to guess" about how the ALJ determined that these restrictions could accommodate Plaintiff's moderate CPP limitations. *Id*. at 637. Indeed, the ALJ's lack of explanation leaves the Court unable to determine whether these provisions were even intended to accommodate Plaintiff's CPP limitations. For these reasons, remand is necessary.[3] *See id.*

On remand, the ALJ must either: (1) provide a narrative discussion that explains how the RFC addresses Plaintiff's moderate CPP limitations or (2) explain why no RFC limitation is necessary to address these limitations. *See Talmo*, 2015 WL 2395108, at *3; *Mascio*, 780 F.3d at 638. Because the case is being remanded on separate grounds, the Court need not address Plaintiff's other arguments. On remand, the ALJ is welcome to consider those arguments and to adjust their decision accordingly.[4]

---

[3] The RFC also limits Plaintiff to "perform[ing] simple and detailed tasks." Tr. 18. Neither party addresses whether this provision might accommodate Plaintiff's CPP limitations. *See generally* ECF 11, 16. But, as with the other provisions at issue in this case, the restriction to "simple and detailed tasks" is not supported by a narrative discussion that explains how the restriction addresses Plaintiff's CPP limitations. Nor is this provision the subject of any opinions contained in the record which, if adopted by the ALJ, might provide support for the RFC's inclusion of the provision. *Cf. Sizemore v. Berryhill*, 878 F.3d 72, 80–81 (4th Cir. 2017) (affirming an ALJ's decision where: (1) the ALJ adopted, without explanation, certain RFC limitations suggested in a medical opinion that provided "detailed findings" on a claimant's "sustained concentration and persistence limitations" and (2) the ALJ assigned the opinion "significant weight"). Accordingly, the inclusion of a limitation to "simple and detailed tasks" does not alter the Court's conclusion.

[4] In remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

*Catherine B. v. Kijakazi*
Civil No. 22-3089-CDA
December 1, 2023
Page 6

## V.  **CONCLUSION**

For the reasons set forth herein, the SSA's judgment is REVERSED due to inadequate analysis pursuant to sentence four of 42 U.S.C. § 405(g).  The case is REMANDED for further proceedings in accordance with this opinion.  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion.  A separate implementing Order follows.


Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge